**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

Jamie Scott, individually and as Personal )
Representative for the Wrongful Death )
Estate of James Anthony Scott, deceased, )
)
        Plaintiff, )    **ORDER GRANTING IN PART AND**
)    **DENYING IN PART MOTION TO**
        vs. )    **COMPEL**
)
City of Bismarck, North Dakota, a )
Municipal Corporation; Dan Donlin, in )    Case No. 1:17-cv-059
his official capacity as Chief of Police for )
the City of Bismarck, North Dakota; )
Shaun Burkhartsmeier, in his official and )
individual capacity; Justin Antonovich, )
in his official and individual capacity; )
John Does 1-5, in their individual and )
official capacities, )
)
        Defendants. )

───────────────────────────────────────────────

Before the court is defendants' Motion to Compel Discovery (Doc. No. 34). For the reasons

set forth below, the motion is granted in part and denied in part.

## I.    BACKGROUND

On March 6, 2016, multiple Bismarck Police Department officers were dispatched to an

apartment building in Bismarck, North Dakota to investigate reports of an intoxicated man roaming

the neighborhood with a shotgun and threatening to kill one of the apartment's residents. Upon

arriving, they encountered James Anthony Scott ("Scott"). Scott fled when confronted by law

enforcement, leaving his shotgun behind. One of the officers in pursuit—defendant

Antonovich—yelled repeated warnings about a gun, although he never saw Scott with a gun as Scott

was fleeing. Exactly what Officer Antonovich said and how many times he repeated it are disputed.

After one or more of the warnings about a gun, another officer—defendant Burkhartsmeier—fired his rifle at Scott three times. Two rounds struck Scott in the back, mortally wounding him. Scott was unarmed at the time.

On March 31, 2017, plaintiff, Scott's widow, initiated the above action on behalf of herself as well as Scott's estate and his survivors. Plaintiff asserts in the complaint claims for violations of civil rights under the federal and state constitutions and state law claims for wrongful death, negligence, and gross negligence. Presently before the court is a motion to compel brought by all of the named defendants with the exception of defendant Antonovich, who was added as a party defendant subsequent to the filing of the instant motion.

## II.   DISCUSSION

### A.   Interrogatory Nos. 1, 2, 3, 17, and 18

Defendants' Interrogatory Nos. 1, 2, 3, 17, and 18 seek background information with respect to Scott's past residences, employment, education, and lawsuits initiated by or brought against Scott. Plaintiff responded to defendants' interrogatories by providing what information she personally has. This is limited to her first hand knowledge dating back to about 2009 when she first met Scott before she married him in November 2011, and information Scott may have shared with her about his past, *e.g.*, where he was from, the fact he graduated from high school, some of the past places he lived, and who some of his relatives were.

Defendants contend that plaintiff's responses are inadequate, arguing that she, as the personal representative of Scott's estate, is under an obligation to provide full and complete information to the interrogatories, which variously request information dating back fifteen years, twenty years, or for an unlimited amount of time. Plaintiff responds, contending the information she has provided

2

is adequate and any further information would be of little assistance and disproportionate to the needs of the case.

The court has carefully reviewed both plaintiff's interrogatory answers and the deposition testimony she has given. The information defendants seek beyond what has been provided with respect to these interrogatories and during plaintiff's deposition testimony would be of marginal, if any, assistance, particularly given the information defendants already have with respect to Scott. The only exceptions might be past locations where Scott has lived (at least in terms of the city if not the exact address) and his past employment. This information might assist defendants in locating additional medical records.

It appears from the interrogatory answers that plaintiff relied primarily upon her own information in answering, although there is some suggestion she may have queried Scott's elderly stepfather in response to defendants' complaints of inadequacy. There is no suggestion, however, that she made any inquiry of Scott's two adult children.

The court concludes with respect to Interrogatory Nos. 1 and 2 that plaintiff must make a good faith effort to obtain whatever information the two adult children have with respect to Scott's prior residences and past employment dating back fifteen years from the date of Scott's death, but only if damages are going to be requested in this action on behalf of the two adult children or if they are "takers" of any amount that may be recovered by Scott's estate. If neither are the case, then no effort need be made to elicit the information from them, and, if defendants think it is worth the additional costs (which the court doubts), they may depose these individuals to obtain it.

Beyond this, while defendants have the right to discover at least some of the information requested by the interrogatories, there is no right to receive the same information in multiple ways.

In exercise of the court's authority under Fed. R. Civ. P. 26(b)(2)&(c)(1) to control the manner and sequence of discovery, including prescribing a discovery method other than what a party may select, the remainder of defendants' motion to compel with respect to Interrogatory Nos. 1, 2, 3, 17, and 18 is denied for the reasons set forth above.

### B. Interrogatory Nos. 10–12 and Request for Production No. 1

#### 1. Introduction

Defendants seek in these discovery requests information and documents about Scott's past treatment by medical care providers, psychologists, psychiatrists, pharmacists, drug and alcohol treatment providers, and marital counselors. For some of the information and documents requested, defendants seek information for Scott's entire life. For others, the time period is more limited. Also, in Request for Production No.1, defendants request that plaintiff sign releases for information from all of the foregoing treatment and service providers so that defendants can obtain the records directly from them.

Defendants contend that plaintiff's responses to these discovery requests are deficient. With respect to the interrogatory answers, defendants state that plaintiff has provided only limited information as to where and from whom Scott obtained medical treatment during his life. With respect to the document requests, defendants contend plaintiff is required to execute the releases but has refused to do so. Further, defendants state that, even for the medical records that plaintiff agreed to provide in lieu of releases, not all have been provided, including none of the alcohol treatment or mental health records.

In response, plaintiff states with respect to the interrogatories that she has provided all the information she has and that the questions seeking information for Scott's entire life are unduly

burdensome and unlikely to produce relevant information. As for the medical and other treatment records, plaintiff states she has obtained and produced some of the *known* records and is in the process of obtaining the remaining known records, including Scott's recent alcohol treatment records. She states she will produce the remaining records when received. Finally, plaintiff refuses to execute the tendered releases for treatment records, claiming there is nothing in the federal discovery rules that requires she must do so.

### 2.     Interrogatory Nos. 10–12

The court agrees that a number of the interrogatories served upon plaintiff in defendants' First Set of Interrogatories are overbroad and unduly burdensome. For example, of those at issue now, Interrogatory No. 11 asks plaintiff to list the dates of each medical prescription and refill for the ten years preceding Scott's death. Really?

While the court is tempted to simply deny the clearly overbroad requests rather than attempt to edit them, plaintiff shall respond with the information she has and shall also make inquiry of Scott's adult children for any other information that they might possess (if any), but limited as follows:

- Interrogatory No. 10 - limited to fifteen years preceding Scott's death and only to the names of the facilities or providers for medical care related to Scott's physical health.

- Interrogatory No. 11 - limited to ten years preceding Scott's death and only to the names of the pharmacies and the location.

- Interrogatory No. 12 - limited to seven years preceding Scott's death and only to the names of the facilities, the locations, and the reason for treatment or service if known.

### 3. Releases for records held by non-parties

#### a. Whether the court has authority to require execution of records releases

The court will address first the issue of whether it can compel a party to execute releases for records held by a non-parties (*e.g.*, releases for medical, employment, education, social security, and cell phone records) when a request for execution of releases has been made as part of a request for documents pursuant to Fed. R. Civ. P. 34 and the party refuses to execute the releases. Unfortunately, the courts are seriously divided over this issue.

A number of courts have concluded that Rule 34 does not provide for execution of releases that would enable the requesting party to obtain directly from a non-party documents that are subject to the control of the party to whom the Rule 34 request is made. According to these courts, any authority to compel execution of releases arises only if the records in the possession of the non-party cannot be obtained by other means and then only as a possible sanction. See, e.g., Cheshire v. Air Methods Corp., No. 3:15-cv-933, 2015 WL 7736649, at *4 (W.D. La. November 30, 2015) ("Cheshire") (employment records); Fields v. West Virginia State Police, 264 F.R.D. 260, 261–64 (S.D. W. Va. 2010) (medical records); Klugel v. Clough, 252 F.R.D. 53, 55 & n.3 (D.D.C. 2008) (medical records); Becker v. Securitas Security Services, USA, Inc, No. 06-2226, 2007 WL 677711, at *3 (D. Kan. Mar. 2, 2007) (medical, employment, and educational records); Moody v. Honda of Am. Mfg., Inc., No. 2:05-cv-0880, 2006 WL 1785464, at **4–5 (S.D. Ohio June 26, 2006) ("Moody") (medical records); Clark v. Vega Wholesale, Inc., 181 F.R.D. 470, 471–72 (D. Nev. 1998) (medical records); see generally J. Grenig & J. Kinsler, Handbook Fed. Civ. Discovery & Disclosure § 9:12 & n.10 (4th ed. July 2018 update) ("Rule 34 may not be used to compel a party

to sign a release or authorization so that the requesting party may obtain a document directly from a non-party."). The reasons most often given by these courts for why releases cannot be requested as matter of course pursuant to Rule 34 are: (1) the language of Fed. R. Civ. P. 34 requiring the party to whom a request for documents is made to either allow the inspection of or produce the documents that are within that party's possession, custody, or control,[1] and (2) the lack of any express provision in Rule 34 for records releases. See id.

Other courts, however, have taken the position that requests for execution of releases can be made pursuant to Rule 34 such as would enable the requesting party to obtain directly from non-parties records that are subject to the control of the party to whom the Rule 34 request has been made. See, e.g., Prado-Guajardo v. Perez, No. 2:16-cv-00546, 2017 WL 3130420, at **5–6 (D. Nev. July 24, 2017) ("Prado-Guajardo") (employment, worker's compensation, insurance, and Medicare-related records); Mir v. L-3 Communications Integrated Systems, L.P., 319 F.R.D. 220, 226–30 (N.D. Tex. 2016) ("Mir") (SSA disability records); Matherne v. Schramm, No. 12–807, 2013 WL 5961096, at **2–3 (M.D. La. Nov. 7, 2013) (medical, employment, SSA, and tax records);

---

[1] Courts have taken different positions with respect to whether particular non-party records are under the "control" of a party such that the party is required to obtain copies of the records from the non-party in order to comply with a Rule 34 request for production of documents. For example, with respect to medical records, some courts have concluded that records in the possession of non-party treatment providers are generally not within the control of the party from whom the records are sought within the meaning of Rule 34(a). Clark, 181 F.R.D. at 472 ("The relationship between the Plaintiff and her doctor is not sufficient to establish control."). Other courts, however, have concluded that medical records are usually within the party's control based on the ability in most instances of the party being able to obtain copies from the treatment providers. See, e.g., Moody, 2006 WL 1785464, at *5 ("Medical records in the hands of a health care provider, while not technically in the possession of a party who has placed his or her medical condition at issue, are within the control of that party because the party can compel the medical provider to release them. Consequently, they should be treated just like any other document which is requested under Rule 34."). The same disagreement exists with respect to employment records. Compare E.E.O.C. v. Randall Ford, 298 F.R.D. 573, 575 (W.D. Ark. 2014) (holding that the employment records of the person upon whose behalf EEOC was suing were not under the control of either the EEOC or the person on whose behalf suit was brought and, for that reason, denying an order to compel execution of releases for employment records) with Prado-Guajardo v. Perez, No. 2:16-cv-00546, 2017 WL 3130420, at **5–6 (D. Nev. July 24, 2017) (concluding that a party had control of employment and other records within the meaning of Rule 34 based on an expansive reading of "control" to include not only documents to which the party has the legal right but also the practical ability to obtain).

E.E.O.C. v. Princeton Healthcare System, No. 10–4126, 2012 WL 1623870, at **19, 22–23 (D.N.J. May 9, 2012) (medical and SSA records); Lischka v. Tidewater Servs., Inc., No. Civ. A. 96-296, 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997) ("cases almost universally hold, explicitly or implicitly, that Rule 34 empowers federal courts to compel parties to sign written authorizations consenting to the production of various documents").[2]

One court required the execution of releases as a matter of expediency in a case where there were some ninety non-party medical providers. Cutting v. United States, No. 07-cv-02053, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008). But, in subsequent cases, the same court has held that, while it has the authority to require execution of releases in unusual cases such as the one just cited, this is not the normal course under Rule 34 and the execution of releases would not be required absent an inability to obtain the documents by subpoena. See Miller v, Kastelic, No. 12-cv-02677, 2013 WL 4431102, at *3 (D. Colo. Aug. 16, 2013). Another court recently elected to punt in view of the uncertainty over the court's authority under Rule 34(a) and gave the party to whom the request for production of documents was directed the option of either signing the releases or obtaining the records from the non-parties and providing them to the requesting party. Vasquez v. Conquest Completion Services, LLC, No. MO:15-cv-188, 2018 WL 3611891, at *3 (W.D. Tex. Jan. 10, 2018) ("The court will not pitch its tent either way [in terms of the competing positions]. Instead, Defendant may choose to either sign the authorization enabling Plaintiff to obtain the cell-phone records from the non-party custodian or Defendant may obtain the records himself from the non-

---

[2]    Even within the same court, there is not always agreement with respect to whether the court can order the execution of releases as a matter of course. For example, plaintiff cites to Moody, 2006 WL 1785464, supra, for her argument that the Federal Rules do not authorize the court to compel execution of releases for treatment records. However, at least one other judge in the Southern District of Ohio has since reached a different conclusion. Langenfeld v. Armstrong World Industries, Inc., 299 F.R.D. 547, 555–56 (S.D. Ohio 2014); see also Jones-McNamara v. Holzer Health Systems, Inc., No. 2:13–cv–616, 2015 WL 196415, at *2 (S.D. Ohio Jan. 15, 2015).

party custodian and produce the records.").

The parties in this case have not cited to any federal court of appeals decision that has squarely decided the issue. The closest case cited by other courts is McKnight v. Blanchard, 667 F.2d 477, 481–82 (5th Cir. 1982) where the Fifth Circuit held that a party was not required to execute medical authorizations submitted pursuant to Fed. R. Civ. P. 33 & 36 but stated in *dicta* the result might be different had they been submitted as part of a Rule 34 request for documents. Id. at 481–82. The Eighth Circuit has upheld the dismissal of cases in two MDL actions where the plaintiffs failed to comply with the district courts' orders to provide signed releases for medical records, but the issue of the district courts' authority to require signed releases does not appear to have been raised in either case and courts in MDL cases sometimes employ procedures that differ from the normal course. Freeman v. Wyeth, 764 F.3d 806, 809 (8th Cir. 2014); In re Prempro Products Liability Litigation, 423 Fed.Appx. 659, 660–61 (8th Cir. 2011).

Within the Eighth Circuit, a number of the district courts have ordered the execution of releases, albeit with little or no discussion about the court's authority to do so. See, e.g., Shikapwashya v. Urban League of Metropolitan St. Louis, No. 4:17-cv-01961, 2017 WL 3575113, at *2 (E.D. Mo. July 25, 2018) (psychiatric and general records); Damgaard v. Avera Health, No. 13-2192, 2014 WL 12608147, at *1 (D. Minn. June 5, 2014) (medical and mental health records); J.J.C. v. Fridell, 165 F.R.D. 513, 517 (D. Minn. 1995) ("Fridell") ("Requests for authorizations for the release of medical records can be properly ordered pursuant to Rule 34 but authorizations are not mandated[,]"); Brown v. Eli Lilly and Co., 131 F.R.D. 176, 178 (D. Neb.1988) (medical records). The same is true for this court, although without explicit consideration of the court's authority. Wetzel v. Brown, No. 1:09-cv-053, 2014 WL 684693, at *5 (D.N.D. Feb. 21, 2014) (ordering *pro*

*se* prisoner to execute releases for mental health and general medical records); <u>Nord v. Walsh County</u>, No. 2:10-cv-114, 2012 WL 12859722, at *2 (D.N.D. March 3, 2012) (physical and mental health records).

Looking to the text of Rule 34, a request for execution of releases for documents held by non-parties can be viewed as being a "request" to the party having control to "produce and permit the requesting parties to inspect" as provided for in subdivision (a)(1). Broadly speaking, a party having control, but not physical possesion, can "produce" and "permit inspection" of the documents by allowing the non-party to produce them. With respect to subdivisions (b)(1)(A)-(B), the request for execution of the proposed releases is the requesting party's specified "manner of inspection" and the requirement that the request "describe with reasonable particularity each item or category" is satisfied with a sufficient description of the documents to be obtained in the proposed releases appended to the Rule 34 request. Further, with the appending of the releases to the Rule 34 request, the responding party has the opportunity under subdivision (b)(2) to object to the scope and terms of the proposed releases in a manner that allows for court review. Finally, there is also the opportunity to object to the use of releases and argue that a different method of production is more appropriate.

Granted, there is language in Rule 34 that does not fit neatly with the use of releases. For example, subdivision (b)(1)(B) requires the requesting party to specify the time and place of the inspection. Also, there is the language in (b)(2)(B) giving the responding party the opportunity to produce the documents rather than allow inspection. However, reading Rule 34 expansively, these provisions could be viewed as applying only to the most common situation that Rule 34 was intended to address, that being when the documents are in the possession of the party to whom the

10

request is made, and not the less frequent situation where the documents are not in the possession of the party but arguably subject to its control.

In short, an expansive reading of Rule 34 arguably does not foreclose the use of releases as an alternative means of obtaining production of documents that are not in the possesion of the party to whom the request is directed but are under its control—at least when the proposed releases are made a part of the Rule 34 request.[3]

Moving beyond the text of Rule 34, the expediency in many cases of employing signed releases to gather information from non-parties cannot be denied given their widespread use as evidenced by the cases cited above as well as this court's understanding of their frequent use in this District. See also Beyoglides, Jr. v. Montgomery County Sheriff, No. 3:14-cv-158, 2015 WL 6859154, at *1 (S.D. Ohio Sept. 8, 2015) ("Traditionally, in this jurisdiction, plaintiff's counsel submits executed medical release authorizations to defense counsel and defense counsel subsequently sends those executed releases to medical care providers."); Britton v. Dallas Automotive, Inc., No. 07-547, 2008 WL 11348474, at *3 (D. Idaho Sept. 24, 2008) (noting that the use of records releases is often the most efficient and expeditious means for obtaining medical information from health care providers); Nuskey v. Lambright, 251 F.R.D. 3, 8 (D.D.C. 2008) ("Courts regularly order plaintiffs to sign authorizations for the release of medical information from health care providers where, as here, those records are relevant to the plaintiff's claims; this procedure has been viewed as the most expeditious and efficient way for the opposing party to obtain

---

[3]  This interpretation is not inconsistent with subdivision (c) of Rule 34, which states that Rule 45 may be used to obtain records in the possession of non-parties. Subdivision (c) and Rule 45 speak to documents in the possession of non-parties generally and not those (or not just those, depending one's reading) that are within the control of a party to the litigation. See also Prado-Guajardo, 2017 WL 3130420, at **5–6 (the availability of other options for obtaining records that are in the possession of a non-party but subject to control of the party to whom the request is made is not reason to foreclose the ability of securing the documents by requesting signed releases); Mir, 319 F.R.D. at 229 (same).

pertinent medical records.").  More particularly, the use of releases likely reduces the number of arguments over the scope of production with the shifting of the burden and costs of obtaining the records to the party requesting them.  In addition, the use of releases for the most part eliminates resource-wasting arguments over whether the documents are actually under the control of the party to whom the request is made and what means of obtaining production is appropriate depending upon how the "control" question is resolved.   Finally, the use of releases facilities the production of documents in those cases where a subpoena pursuant to Fed. R. Civ. P. 45 is not enough.[4]

While expediency alone cannot be grounds for construing Rule 34 to permit requests for signed releases, it does provide support for an expansive reading of Rule 34 to allow for such use consistent with Fed. R. Civ. P. 1.  In relevant part, Rule 1 commands that the federal civil rules are to "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  See also 8B Fed. Prac. & Proc. Civ. § 2202 (3d ed. Sept. 2018 update)  (Rule 34 "is to be liberally, rather than narrowly, construed.").

Plaintiff argues that Rule 34 contemplates that the party from whom records are sought has

---

[4] As discussed in note 1 supra, courts have disagreed over whether certain non-party records are subject to the control of the party to whom a Rule 34 request for production has been made, including, for example, medical and employment records.  Further, that is not the end of the disagreement.  For records that are deemed to be under the control of the party, some courts take the position that only a Rule 34 request for production of documents is appropriate. See, e.g., Cheshire, 2015 WL 7736649, at *4;  Moody, 2006 WL 1785464, at **4-5.  Other courts, however, appear to be of the view that a subpoena pursuant to Fed. R. Civ. P. 45 can also be used.  See, e.g., Prado-Guajardo, 2017 WL 3130420, at *5; Mir, 319 F.R.D. at 229.  If it is determined that the records are not under the control of a party, then the only means of obtaining the records under the federal rules would be by a Rule 45 subpoena.  But, for certain records, a Rule 45 subpoena is often ineffectual because the non-parties refuse to comply with a Rule 45 subpoena, irrespective of the question of control, unless there is a signed release or possibly a separate court order.  This is true for number of governmental records because of additional statutory or regulatory requirements.  See, e.g., Prado-Guajardo, 2017 WL 3130420, at *5; Allen v. Indian Harbor Marine, Inc., No. Civ. A. 96-3135, 1997 WL 666210, at *2 (E.D. La. Oct. 24, 1997).  It is true for most medical records in light of HIPAA.  See, e.g., Fields, 264 F.R.D. at 261–62.  It also appears to be true for most, if not all, records that are subject to the Stored Communications Act.  See, e.g., Lucas v. Jolin, No. 1:15-cv-108, 2016 WL 2853576, at *5  (S.D. Ohio May 16, 2016) (stating that "courts have overwhelming held that the SCA prevents a provider from releasing the 'contents' of a user's stored communications in response to a civil subpoena from a third party" but that a provider can release communications if the subscriber gives consent to the release).

the right to vet its own documents—including those that it controls but are in the hands of a non-party. If the court requires use of releases, plaintiff argues she loses this right, including the ability to withhold from anyone's view documents that are privileged or otherwise highly personal or sensitive and not admissible for any purpose.

Whatever right a party may have to not turnover documents without the opportunity for some court review, it is doubtful that Rule 34 is its source. Moreover, a party to whom a Rule 34 request for releases is directed does have the opportunity to object and request relief from the court. In fact, that is what is happening now. And, in those instances where circumstances broker for using a different method of production, it is well within the court's authority under Fed. R. Civ. P. 26(b)(2),(c)(1),&(d)(3) to order it. For example, the court can order that the party to whom the Rule 34 request for releases is directed be given the opportunity to obtain and produce the documents instead of requiring the releases to be signed. See, e.g., Fridell,165 F.R.D. at 517 (while concluding that requests for medical releases are a proper form of discovery under Rule 34, denying request of signed releases for medical records bearing upon plaintiff's mental and emotional health in favor of permitting plaintiff's counsel obtaining the documents and performing an initial screening of them). The court also could order that the proposed releases be revised so as to require the non-parties to produce the documents to the attorney for the party to whom the Rule 34 request was directed for initial screening rather than the attorney for the party seeking the documents. Also, in one case, a court ordered that the attorney for the party who obtained the documents pursuant to the releases to (1) provide one copy of the documents to the attorney for the party that provided the releases and (2) place the produced set of documents in an envelope, without first examining or reviewing them, until the court could rule on the claims of privilege. Pederson v. Bio-Medical Applications of Minnesota,

No. 12-2649, 2013 WL 12305034, at **1, 4-5 (D. Minn. Sept. 20, 2013).

Upon consideration of the foregoing, plaintiff's objection that the court lacks the authority to compel execution of releases requested pursuant to Rule 34 is overruled. While it is a close question, the undersigned concludes that an expansive reading of Rule 34 allows for (but does mandate) the use of proposed releases as a means of obtaining production of documents if the proposed releases are made a part of the Rule 34 request.[5] And, with this conclusion, the court's authority to compel execution of releases is no different from its authority to compel compliance with Rule 34 generally. See, e.g. Prado-Guajardo, 2017 WL 3130420, at *4; Mir, 319 F.R.D. at 239–40; Fed. R. Civ. P. 37(a)(3)(B)(iv).[6]

### b. The requests for signed releases pursuant to Request No. 1

After balancing the interests of the parties, including the fact Scott is deceased (thereby lessening the privacy concerns) and plaintiff's limited knowledge of where Scott has received treatment or been provided other services, the court will require that plaintiff, in her capacity as the

---

[5] To be clear, while the undersigned rejects plaintiff's argument that the court lacks the authority to compel execution of releases submitted as part of a Rule 34 request in appropriate cases, the court similarly rejects the following unsupported hyperbole in defendants' brief:

> In objecting and refusing to provide discovery, Plaintiff has decided she is entitled to be the gatekeeper, especially as it pertains to her own and to Tony Scott's medical, mental health, and addiction/drug use history. She refuses to sign medical and other authorizations that would allow Defendants to obtain relevant records direct from the source. Instead, Plaintiff's counsel has offered to "prescreen" records, redact them, and then produce them to the Defendants, which is a practice Plaintiff's counsel has stated is their "standard practice". This practice is unusual, prejudicial, and inefficient, virtually never appropriate or allowed, and certainly does not comport with full, fair and liberal discovery. Gatekeeping is the Court's role at trial, and is not the role of Plaintiff's counsel in discovery. It also effectively allows Plaintiff to determine what discovery is allowable and what evidence will be available for trial. This is improper and should not be allowed.

(Doc. No. 38). A different method of production may be appropriate in cases where there appear to be a serious question with respect to privilege, there are legitimate privacy concerns, or the information is otherwise particularly sensitive (e.g., involving trade or commercial secrets) and a confidentiality order is deemed insufficient to address the concerns.

[6] Given the prevalence of the use of signed releases and the differing conclusions that courts have come to with respect to when and how they may be used, it may be time to consider revising Rule 34 to resolve the issue one way or the other.

personal representative of Scott's estate, execute and provide to defendants releases for Scott's medical, pharmacy, mental health, and alcohol treatment records, but not for any records generated from the marital counseling that both Scott and plaintiff participated in as identified in response to Interrogatory No. 12.

With respect to the marital counseling records, the court will give plaintiff the opportunity to obtain and produce any responsive records in lieu of having to provide signed releases. For any documents that plaintiff withholds or redacts, plaintiff shall (1) submit that material to the court for *in camera* inspection and (2) file a brief setting forth the grounds for any withheld or redacted information.

The court will not set any particular date limitation on the records to be produced bearing upon Scott's general physical health. The circumstances of the case are likely to limit the production as a practical matter. Further, the burden and cost of securing the records has now been shifted to the defendants. However, for Scott's mental health and alcohol treatment records, the limit shall be seven years prior to Scott's death. And, for the marital counseling records, the limit shall be five year prior to Scott's death.

Defendants shall promptly forward copies of any records obtained pursuant to the releases to the attorneys for plaintiff—in this case free of cost. Further, defendants shall not use the documents as received for any purpose unless they have been first provided to plaintiff at least 48 hours in advance. The court concludes it unfortunately needs to include this additional proviso because of disputes between the parties relating to documents that were secured pursuant to signed releases.

Documents obtained pursuant to the releases that address Scott's mental health or alcohol

treatment shall not be disclosed by counsel for either party to any other person; that is, the documents shall be for "attorney's eyes only." The same shall be true for any marital counseling documents that plaintiff produces or the court orders be produced after an *in camera* inspection. An exception is that counsel for each party can designate one staff person who can have access for administrative handling but subject to the same requirements of non-disclosure imposed on counsel. All other documents obtained pursuant to the releases shall be treated as "confidential" pursuant to the court's protective order at Doc. No. 22. And, if any of the foregoing documents ("attorney's eyes only" or "confidential") need to be used or filed in connection with any motion or proceeding before this court, the parties shall file the documents under seal.

Finally, while it appears that proposed releases were appended to defendants' Rule 34 requests, they were not made a part of the record here. If plaintiff has objections to the terms of the releases other than what the court has ruled on, plaintiff shall immediately request a conference with the court so that a ruling can be made but only after plaintiff has first made a good faith effort to resolve any differences with the defendants.

### C.     <u>Requests for Production 3, 4, 5, and 6</u>

Defendants' Requests for Production 3, 4, 5, and 6 seek signed releases of records for: claims by Scott for worker's compensation (No. 3) and disability insurance (No. 4); claims by both Scott and plaintiff for Social Security benefits and Social Security Disability (No. 5); and Social Security earnings statements for both Scott and plaintiff (No. 6).

The court overrules plaintiff's objection that the court lacks the authority to compel execution of releases for the reasons already articulated. With respect to Scott, the court requires that plaintiff, in her capacity as personal representative of Scott's estate, execute signed releases for the above

record as they pertain to him subject to the same caveat of the court not having seen the proposed releases and that plaintiff may have additional objections to the terms of the releases.

With respect to the plaintiff, she has already executed a release for her Social Security survivor benefits according to her brief. As for plaintiff's Social Security earnings statement or any claim for disability on her part, the court denies the request for releases for these records. Defendants have failed to demonstrate how any of that information is either relevant to this action or realistically might lead to relevant information beyond what defendants are already entitled to obtain.

**D.** **Request for Production No. 32**

Request for Production No. 32 requests copies of all documents generated as a result of plaintiff having seen any counselor, psychologist, therapist, or mental health professional within five years preceding Scott's death and at anytime since. Defendants' brief claims that it also requested that plaintiff sign releases for these records as part of their request for production of documents, but the only requests referenced in the briefing on the current motion are Request No. 1, which relates only to Scott, and Request No. 32, which is not a request for signed releases. But, even if a request for signed releases was properly made, the court would not order signed releases with respect to these highly personal and confidential records.

Putting aside the manner of production, plaintiff objects to having to provide any of the records on the grounds that they are irrelevant because she will not be seeking damages for emotional loss greater than what would be suffered by another other person in her circumstances having suffered the loss of a spouse. She contends this renders the requested documents irrelevant and not subject to production for this reason, citing this court's decision in Auer v. City of Minot, 178 F.

17

Supp. 3d 835 (N.D. 2016).

Auer, however, was a different case. In that case, the plaintiff stated she was restricting her claim for non-economic loss suffered as a result of an alleged wrongful discharge from employment to the hurt feelings, humiliation, anger, and embarrassment that would be suffered by any person that was similarly involuntarily terminated. The court held in Auer that the plaintiff was not required to produce her mental health and counseling records so long as she: (1) limited her claim for non-economic loss to that just described (which necessarily would result in a jury instruction limiting what is recoverable); (2) did not call an expert to testify about her emotional distress; and (3) did not call any layperson witnesses to testify about what they observed with respect to the impacts of the termination upon her. Auer, 178 F. Supp. 3d at 840–47. In this case, even if the mental distress that plaintiff is claiming could be compared to that of the plaintiff in Auer (which the court need not decide now), it is not at all clear from reviewing plaintiff's complaint and her discovery responses that she is limiting her claims for mental distress to the same extent as the plaintiff in Auer, notwithstanding the somewhat vague assurances in her brief that her claims and evidence will be so limited.

As this court noted in Auer and in Magelky v. BNSF Ry. Co., No. 1:06-cv-025, 2008 WL 238451, at **2–5 (D.N.D. Jan. 28, 2008) ("Magelky"), a plaintiff can put her mental health at issue depending upon the evidence that is offered, including waiving any psychotherapist-patient privilege under Jaffee v. Redmond, 518 U.S. 1(1996) when federal common law governs, or under N.D. R. Evid. 503(d)(3) when state law supplies the rule of decision. See Fed. R. Evid. 501. At this point, the court is not prepared to conclude plaintiff has not put her mental health at issue.

In addition, this case is also different from Auer in that the plaintiff here is claiming loss of

consortium and economic loss extending far into the future and there is concrete, non-speculative evidence that she and Scott were having marital difficulties, including that Scott had been physically abusive to her. The records that are being sought with respect to these requests might very well contain evidence that would bear upon the claims of loss of consortium and economic loss, apart from the claim of emotional loss.

In short, the court for now overrules plaintiff's blanket objection that none of the information that is the subject of Request No. 32 need be produced based on <u>Auer</u>. Plaintiff shall be required to obtain the information that is the subject of Request No. 32 and then produce documents are responsive unless there are specific objections, *e.g.,* a renewed claim of privilege, lack of relevancy, a Fed. R. Evid. 403 objection, or lack of defendants' legitimate need for the particular information in light of other information defendants already possesses. For any information that plaintiff withholds or redacts based upon these grounds, plaintiff shall (1) submit that material to the court for *in camera* inspection, and (2) file a brief setting forth the grounds for why any of the withheld or redacted information need not be produced. For any information that is turned over or that the court orders be produced, it shall be treated as "attorney's eyes only" in the same manner as discussed earlier with respect to certain of Scott's records. The ultimate admissibility of the evidence in this instance will be for the trial judge to decide.

### E. <u>Interrogatory No. 9</u>

Interrogatory No. 9 number reads as follows:

> **INTERROGATORY NO. 9:** If it will be claimed that at any time the defendants Dan Donlin, Shaun Burkhartsmeier and/or the City of Bismarck, their agents, representatives, and/or employees, have been heard to make any statements or admissions against interest concerning the cause of the subject incident and/or any circumstances surrounding the subject incident please provide the substances of each statement or admission, the time and place when made, the person who made it, the person to whom it

was made, and state who was present when the statement or admissions was made.

Plaintiff objects to this interrogatory: (1) as being overbroad and unduly burdensome in that it could be interpreted as requiring disclosure of virtually all impeachment material and it being difficult to know in advance of the highly dynamic situation at trial when and how certain information might be used; (2) unfairly calling for the disclosure of counsel's trial strategies and work product; (3) requiring recitation of a large volume of information already in the hands of defendants; and (4) being premature, in any event, until discovery is completed or near completion.

The court agrees that the interrogatory as drafted is overbroad, burdensome, and, at least in part, inappropriately requires disclosure of attorney work product. Although, perhaps, not what defendants intended, the interrogatory as written could be construed as requiring plaintiffs to identify and provide the substance of any "statements" regarding the "cause" or "circumstances of the subject incident"—even those set forth in the City's own official reports of the shooting.

Further, even apart from that, there could be substantial uncertainty with respect to what might be considered a declaration against interest in any particular situation. What about a statement made by one of the officers at the scene of the shooting that is already contained in the official police reports that may suggest he or she did or failed to do something for which there is an argument that it amounted to a violation of department procedures or good practice? Is the statement by that officer one that is against his or her interest since it could potentially result in discipline? Does plaintiff have to parse through all of the investigation material generated by defendants, decide whether any statements might theoretically qualify as a statement against interest, and then regurgitate that back to defendants? What if plaintiff intends to use a particular statement that arguably might be a declaration against interest for purposes of impeachment only?

On the other hand, the purpose for discovery is to eliminate unfair surprise. And, for example, if plaintiff was to claim at trial that defendant Burkhartsmeier admitted to her in a private conversation he should not have shot Scott, it seems this is the sort of thing that ought to be discoverable.

Under Fed. R Civ. P. 26(a)(1)(A)(i) both parties are obligated to provide without any demand being made:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

In terms of this particular case, keeping in mind Fed. R Civ. P. 26(a)(1)(A)(i)'s requirements and without deciding what might be an appropriate interrogatory in other cases if phrased differently, plaintiff shall provide a supplemental answer that is limited to any statement that plaintiff or her attorneys have knowledge of that is (1) made by a named defendant and (2) rises to the level of being an admission (and not just evidence) of fault or liability. In case of defendant City of Bismarck, this would include a statement by a person that plaintiff contends amounts to an admission of fault or liability on the part of the City because of that person's position or authority. If plaintiff is not aware of any such statements as the court as redefined what must be answered, plaintiff can respond stating she has no information with respect to any such admission as of the current time, keeping in mind her obligation to timely supplement the answer should the situation change.[7]

---

[7] The only case cited by either party with respect to the appropriateness of Interrogatory No. 9 is plaintiff's reference to <u>Folz v. Union Pac. R. R. Co.</u>, No. 13-cv-00579, 2014 WL 357929, at *3 & n.1 (S.D. Cal. Jan. 31, 2014). To the extent that decision can be read as being contrary to what the court has ruled, the court respectfully disagrees. Notably, the work-product doctrine, to the extent it might apply, is not absolute and the need of a party to obtain in advance of trial information with respect to any claimed admission of liability is substantial. Arguably, it is no less than the perceived need for allowing discovery of prior written or recorded statements of a party under Fed. R. Civ. P. 26(b)(3)(C) as expressed in the commentary to Rule 26. <u>See</u> Advisory Committee Notes to 1970 Amendments to Fed.

## F.    Interrogatory No. 14 and Requests for Production Nos. 23 and 29

Interrogatory No. 14 requires that plaintiff state all past illicit drug use by Scott including what drugs he has used, the quantities, and the time frames.  Plaintiff objects to the interrogatory on the grounds of lack of relevancy, overbreadth (no limitation as to time), and lack of knowledge to be able to provide fully responsive information.  Plaintiff cites to this court's decision in <u>Magelky</u>, <u>supra</u>, as support for why Scott's past illicit drug use would not be admissible in this case.

In ruling on a motion in limine in <u>Magelky</u> (a "slip and fall" FELA case), this court did exclude evidence of the plaintiff's drug use (prescription pain medication before the accident and addiction to hydrocodone afterwards) as it might bear upon her claim for economic damages.  2008 WL 238451, at *5. What plaintiff ignores, however, is that the court did so on Fed. R. Evid. 403 grounds—not lack of relevancy.  In this case, the court might very well balance the Rule 403 factors differently and conclude that some of the evidence of Scott's prior drug use is relevant with respect to the issue of damages, *e.g.,* what impact it may have had upon his projected life span as well as his ability to produce a steady stream of income in the future.  Further, plaintiff conveniently overlooks the fact that the court also stated in <u>Magelky</u> that it was leaving open the question of whether the evidence of plaintiff's drug use might be admissible with respect to her claim for non-economic loss. <u>Id.</u>  Consequently, plaintiff's objection of lack of relevancy is not grounds at this point for not

---

R. Civ. P. 26.  Further, the fact that subdivision Rule 26(b)(3)(C) does not extend to oral statements of a party does not in the undersigned's view foreclose the ability to seek information with respect to statements that rise to the level of being an admission of fault or liability.  But <u>cf.</u> <u>Bohannon v. Honda Motor Co., Inc.,</u> 127 F.R.D. 536, 540 (D. Kan. 1989). Finally, the court notes that authors of several practice guides have recommended the use of interrogatories to elicit information about claimed admissions or declarations against interest by a "party."  <u>See</u> 2 <u>Lane's Goldstein Litigation Forms</u> § 26:42 (Aug. 2018 update) (sample interrogatories); S. Allen, 42 <u>N.J. Prac., Discovery</u> § 2.79 (Nov. 2017 update) (suggesting that an interrogatory requesting information about claimed admissions or declarations against interest by a "party" is one of a handful of questions that should be posed in almost every case).   However, it appears that the interrogatories contemplated by these authors are more limited.  Also, there was no discussion about any of the issues raised here. <u>Id.</u>

responding to defendant's interrogatory.

That being said, plaintiff's personal knowledge with respect to the matters covered by Interrogatory 14 was explored thoroughly in her deposition. Hence, the court will not require in this particular instance a supplementation of her answer with respect to her own knowledge. However, plaintiff shall make an inquiry of Scott's two adult children if evidence as to their loss is going to be presented at trial or if they are takers in Scott's estate. For any illicit drug use by Scott that they have observed or are otherwise familiar with, information as to the type of drug, the approximate time frames of use (if known), and the relative frequency (if known), should be provided in a supplemental answer to Interrogatory No. 14 but limited to ten years preceding his death.

Document Request No. 23 requires production of documents of any accusations, charges, or convictions for any misdemeanor or felony offenses. Plaintiff shall produce responsive documents if she or Scott's Estate are in possession of any. To the extent this request can be construed as attempting to impose an affirmative obligation to seek out such material in the hands of the others (which some of the wording of the Request No. 23 appears to suggest, *i.e.*, "[b]e sure the documents provided include the following information . . . . ), the request is denied.

Document Request No. 29 seeks the same information as requested by Interrogatory No. 14 but contained in documents. Plaintiff shall provide responsive documents in her or the Estate's possession, if there are any, but is under no obligation to seek out that information from others.

## III.   ORDER

Defendants' motion to compel discovery is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall supplement her discovery responses and execute releases in accordance with the foregoing discussion within twenty days. Otherwise, defendants' motion to compel discovery is

denied.

Given the foregoing disposition of defendants' motion to compel, the court will not award

fees or costs to either party.

**IT IS SO ORDERED**.

Dated this 17th day of September, 2018.

/s/ Charles S.  Miller, Jr.
Charles S.  Miller, Jr., Magistrate Judge
United States District Court